## THE WINFIELD S. CAHILL.

### THE BERKS.

(District Court, E. D. Pennsylvania. June 6, 1904.)

#### No. 91.

1. COLLISION—DELAWARE RIVER—VESSEL ON WRONG SIDE OF CHANNEL.

    A vessel passing from Philadelphia down the Delaware river on the left or New Jersey side assumes the risk incident to being on the wrong side of the channel, and is required to exercise extra precautions to avoid collision with vessels coming up which are rightfully on that side.

2. SAME—STEAM VESSELS MEETING—INSUFFICIENT LOOKOUT.

    A tug with a high-bowed barge on her side, which obscured her starboard light, passing down from Philadelphia on the left-hand side of the channel, and the barge, which carried no side-lights, *held* in fault for a collision with a tug coming up with a tow, on the ground of the want of proper lights, and that they failed to maintain a proper lookout, especially required, since they were on the wrong side of the channel, by reason of which they did not see the approaching tug, nor hear her signals for passing.

In Admiralty. Suit for collision.

Curtis Tilton, for libelant.
Willard M. Harris, for respondents.

HOLLAND, District Judge. Lewis Boyer, as managing owner, files this libel to recover the damage caused the tug John B. Patton as a result of a collision with the barge Berks on the Delaware river on November 28, 1900, about 6 o'clock p. m., nearly opposite Cooper's Point, on the New Jersey side of the channel. The testimony in this case, as usual, is somewhat conflicting, although it plainly appears from that given by disinterested witnesses and the circumstances of

the case that the respondents are responsible for this collision. On the night of November 28, 1900, Harry T. Trout, the master of the tug John B. Patton, had in tow, on her starboard side, the Empire City, a low-deck barge, and was proceeding up the Delaware river on the right-hand side of midchannel, bound to the Gashouse Wharf, at Tioga street, in the port of Philadelphia. Her side lights were properly set, in accordance with the rules, and burning brightly; her towing lights were in their proper places; and the captain himself was in the pilot house on the lookout. Between 5 and 6 o'clock of the same evening the tug Cahill, with the barge Berks in tow, left Pier 16 of Port Richmond, in the city of Philadelphia, and proceeded down the Delaware.river, also on the Jersey side of midchannel. The Berks is a very large barge, with a high bow, and was towed this night on the starboard side of the Cahill, without side lights as required by the rules. The Cahill, however, had her green light on the starboard, and red light on her port, side; but these were somewhat obscured from ahead by the high sheer of the Berks bow, and there was no lookout on the Berks, as the captain and the only other employé, the cook, were eating supper at the time of the collision. The captain was in the pilot house in charge of the tug Cahill, and Harb H. Hickman, the mate, was on the bow of the upper deck of the tug Cahill, standing forward of the pilot house, on the lookout. As the Cahill, with the Berks in tow, and the Patton, with the Empire City, approached each other, the captain of the Patton noticed the white towing lights of the Cahill, and gave the signal of one blast of his whistle to denote that the Patton was keeping to the right, and, at the same time ported his helm. Receiving no signal in return from the Cahill, he gave a second signal of one blast, and kept to the right. The captain of the Cahill failed to see the Patton or respond to the signals, but kept on his course. As there were no side lights to be seen on the Berks, and the Cahill's side lights were obscured by the high bow of the Berks, and nothing visible to the captain of the Patton, excepting the towing lights on the Cahill, he was unable to determine which way the Cahill and Berks were going, and at the time he gave the second signal the Patton was so close to the Berks that he was unable to avoid the collision. The stem of the Berks came in contact with the Patton on the port bow, a few feet aft the stem, at an angle of about 45 deg., which shows that the captain of the Patton was endeavoring to pass the object ahead of him on his port side, as the two signals which he had given indicated. If the parties in charge of the Cahill and the Berks had maintained a proper lookout, although they were on the wrong side of the channel, this collision would have been averted. The fact alone that they were on the wrong side of the channel, to wit, the Jersey side, going down the river, should have suggested an extra precaution in their lookout for vessels coming up; and, while there is some evidence in this case that it is a custom to take the short cut at this point where there is a bend in the river, yet it is not sufficient to establish this custom as a right, and those who take this side take the risk in doing so. The claim by the respondents that immediately before the collision the Patton was off to the starboard side of the Berks, and suddenly

sheered around to the Jersey side, so that the barge struck her at right angles, is not supported by the evidence, as it is established that the Empire City parted her towing lines as a result of the impact, and passed up the river on the port side of the Cahill—a circumstance showing clearly that the barge and the tug came together more nearly head-on than at right angles.

These facts lead the court to the conclusion that the fault lay entirely with the Berks and the Cahill, and a decree, therefore, may be entered in favor of the libelants for damage and costs.